## GARBUTT & DONOVAN *v.* MAYO *et al.*

1. Possession of land is notice to the world of every right that the possessor has therein, legal or equitable.
2. If a father make a parol gift of land to a child, who enters into possession and, upon the faith of the parol gift, erects valuable improvements upon the premises, equity will decree the specific performance of the agreement, and the right to apply for a decree of that character is complete as soon as the improvements are erected, without reference to the duration of time that has elapsed after the gift was made.
3. If a father sells property belonging to a child, and the child receives from the father, or his executor, after his death, the proceeds of the sale, with knowledge of the fact that it is the proceeds of the sale of his own property, the child will be thereafter estopped from asserting title to the property as against the purchaser from the father. If, however, the child receives the money which is the proceeds of such sale in ignorance of the fact that it was derived from the sale of his own property, he will not be estopped from asserting title as against the purchaser. Under such circumstances he may be required to account for the money received by him, to the purchaser whose claim is defeated by the assertion of such title, but he will not be estopped from asserting the title. The burden of showing the amount so received would be upon the person seeking the accounting.
4. The maxim that "he who asks equity must do equity" has no application to a defendant in an equity case who asserts a pure legal right to defeat the application of the plaintiff for equitable relief. If, however, the defendant, by way of a cross-bill, seeks equitable relief, the maxim is applicable so far as the relief thus sought is concerned, but the defendant may, at the trial, rely upon the legal defense, without reference to the maxim, and, if such defense is established, is entitled to prevail.
5. The charge of the judge, when taken in its entirety, fairly submitted to the jury the issue of title, which was the only question involved in the

case. The evidence authorized the verdict, and no sufficient reason has been shown for reversing the judgment.

Argued February 25,—Decided May 15, 1907.

Equitable petition.   Before Judge Rawlings.   Tattnall superior court.   September 7, 1905.

Garbutt & Donovan brought an equitable petition against W. T. Mayo and his wife, M. B. Mayo, C. S. Meadows and his wife, Sophronia Meadows, and others, alleging, that the plaintiffs were partners and were the owners of the timber on a described parcel of land, which they had purchased from Moseley, who had executed to them a timber lease; that at the time they purchased the timber, Moseley had also given a turpentine lease to W. J. Evans; that at the time of the purchase they believed that all of the land was in the county of Emanuel; that, while the lease described the land as being in Emanuel county, the description by the mention of the adjoining landowners is so accurate that the land can be identified, nothwithstanding the misdescription of the county as to a portion of it; that at the time of the death of Moseley there was a balance due on the purchase-money, which the plaintiffs paid to his executor and to the defendants, who were the heirs at law of Moseley, except Mayo and Meadows; that since the payment to the executor, the plaintiffs have discovered that a part of the land is in the county of Tattnall; that with a full knowledge of the fact of their purchase and of their claim of ownership, Mayo has entered on the land and is now felling the timber thereon, and has already cut and hauled away trees of the value of twenty dollars or more; that the plaintiffs purchased the timber for sawmill purposes and are actively engaged in the sawmill business; that the value of the timber depends upon the amount that can be realized from the lumber, and their damages are incapable of estimation, and Mayo is insolvent. The prayer is, that the timber lease be reformed so as to describe the land as being situated in part in the county of Tattnall, and that their title to the timber upon the whole tract be confirmed, and that injunction issue, restraining the defendants from interference with the timber; and for general relief.   Attached to the petition is a copy of the timber lease from Moseley to W. O. Donovan & Co., dated September 20, 1898.   While there does not appear upon the copy any entry showing that the original was recorded, it is alleged in the petition that the timber lease was duly recorded

in the county of Tattnall, as well as in the county of Emanuel. In an amendment it is alleged that plaintiffs are the successors of W. O. Donovan & Co., both firms being composed of the same parties.

Sophronia Meadows and her husband filed an answer, in which it is alleged, that she is the daughter of Moseley, and that she and her husband intermarried on February 6, 1898; that long prior thereto Moseley bargained, sold, and gave to her a described tract of land in Tattnall county, containing 250 acres, more or less, being a portion of the land described in the timber lease to Donovan & Co.; that in confirmation of such gift and sale, Moseley, on January 12, 1897, executed and delivered to her a deed conveying the land to her, which deed was recorded on December 19, 1901, and July 29, 1902; that this deed was made and delivered before the date of the lease under which the plaintiffs claim, and she was in possession at the date of that lease; that the real consideration of the deed to her was services rendered by her to her father, consisting of nursing him, housekeeping, and general domestic services; that her father never paid taxes on the land after January 12, 1897, and always disclaimed title thereto after that date; that she has been in possession for seven years, without the payment of any rent to her father, and without acknowledging his dominion, and without disclaiming title thereto, but, on the contrary, has always claimed title during the last seven years, by virtue of the said bargain and gift, confirmed by the deed above referred to. After alleging that the destruction of the timber on the property would produce irreparable damage, and that the estate of Moseley is solvent, the answer prays that the plaintiffs be enjoined from cutting and carrying away the timber on the land described.

W. T. Mayo and his wife filed an answer, in which it is alleged, that Mrs. Mayo is the daughter of Moseley; that on July 20, 1895, Moseley gave to her a described tract of land in the county of Tattnall, containing 225 acres; that the gift was in parol; that on the faith of the parol gift the defendant, on the date named, took possession of the tract of land, which was then barren of buildings, improvements, and cleared land; that relying on the gift, these defendants cleared twenty-five acres of land and placed it in a fine state of cultivation, and erected on the land a dwelling-house, barns, buggy-house, and other necessary outhouses, which improvements are of the value of $750, and are permanent, substantial, and valuable;

that they have been in exclusive possession of the land since July 20, 1895, without the payment of rent to Moseley or to any one else; and there has been no claim of dominion by Moseley during that time, nor any acknowledgment of title in him by the defendants, but, on the contrary, Mrs. Mayo has claimed title thereto all the time; that her possession has continued for more than seven years; that on January 12, 1897, Moseley, in confirmation of the gift, conveyed the land to her; that the land is embraced in the tract described in the timber lease under which the plaintiffs claim, but the defendants deny that the plaintiffs ever acquired title by virtue of such lease. It is admitted that Mayo cut fifteen sticks of timber, but it is alleged that the plaintiffs carried the same away, and cut and carried away other timber. They pray for an injunction to restrain the further cutting of timber by the plaintiffs, and an accounting as to the timber already cut, and for general relief.

Upon the coming in of these answers the plaintiffs filed an amendment, in which they struck all the parties defendant except Mayo and his wife and Meadows and his wife. They also struck all prayers for damages against the defendants except such damages as might be found against them growing out of the granting of the injunction prayed for in the answers. In answer to the portions of the answers which were in the nature of cross-petitions, it is alleged, that the titles set up by the defendants are fraudulent and void; that the deeds were deeds of gift, and, while there purports to be a valuable consideration, that the amount is small and was never paid; and if it was paid, it was not the real consideration, but that the grantor's motive in making the deeds was natural love and affection for his daughters; and that the deeds were never delivered. The case came on for trial and a nonsuit was granted as to Mayo and Meadows, and a mistrial was declared as to Mrs. Meadows and Mrs. Mayo. At a subsequent trial a general verdict was rendered in favor of the defendants. The plaintiffs made a motion for a new trial, which was overruled, and they excepted.

*Saffold & Larsen* and *Howard Van Epps,* for plaintiffs.

*W. T. Burkhalter* and *James K. Hines,* for defendants.

COBB, P. J. (After stating the facts.)

1. The motion for a new trial presents a number of questions. Among them is the question as to whether Mrs. Meadows and Mrs. Mayo have title at all to the land claimed by them. We will first

deal with the question as to whether, under the evidence, Mrs. Meadows has sustained her claim of title. She claims under a deed from her father, C. C. Moseley, dated December 12, 1897. The first attack made upon her deed is that it was never delivered. While the evidence on this question was conflicting, it was sufficient to authorize a finding that there was a delivery. The next attack made upon her title is that the deed under which she claims was a voluntary conveyance, and therefore the timber lease of the plaintiffs, although subsequent in date to her deed, was superior, for the reason that the grantees therein purchased the timber without actual notice of her title. The evidence was sufficient to authorize a finding that she was in possession of the property claimed by her at the date of the timber lease. This possession was notice to the world of whatever interest she had in the land. *Austin* v. *Sou. Home Asso.,* 122 *Ga.* 440. In addition to this there was evidence authorizing a finding that the deed was founded upon a valuable consideration, and that Mrs. Meadows was in no sense a volunteer. *Martin* v. *White,* 115 *Ga.* 866. So far as her claim was concerned, a finding in her favor that she was the owner of the land as against the plaintiffs, who were the holders of a timber lease executed subsequent to the date of her deed and at the time when she was in actual possession of the premises, was authorized by the evidence. She had a superior title to that of the plaintiffs.

2. Mrs. Mayo does not rely upon a deed to sustain her claim of title. There was evidence that her father had signed a deed to her embracing the premises claimed, but the evidence was not sufficient to establish that this paper was ever delivered. She relies upon a parol gift of the land by her father to her. There was evidence to authorize a finding that there was such a gift, and that, relying upon the same, she went into possession of the property and made valuable improvements thereon, and was in possession at the date of the execution of the timber lease. This gave her a complete equity in the land as against her father, and would have been sufficient to support a decree for specific performance against him. The record does not disclose the exact date at which all of the improvements were mabe, but there was evidence authorizing a finding that a substantial portion of the improvements, if not all, were made prior to the date of the execution of the timber lease

by her father to the plaintiffs. If she was in a position at the date of the timber lease to compel a specific performance on his part, the timber lease would be inferior in dignity to her outstanding equity. The claim of Mrs. Mayo does not rest upon the presumption of a gift resulting from exclusive possession by a child for seven years under certain circumstances, as detailed in the Civil Code, §3571, but rests upon the right of specific performance given in §4039, which lays down the rule that where possession of lands has been given under a voluntary agreement, upon a meritorious consideration, and valuable improvements have been made on the faith thereof, equity will decree a performance of the agreement. *Bell* v. *Sappington,* 111 *Ga.* 391. In the first case, where a presumption of a gift arising from exclusive possession of land is relied on, the claimant must show possession for seven years, while in the latter case the length of the possession is immaterial. The fact that there was a gift of land and valuable improvements erected on the faith of this gift completes the equity, without reference to the time that may have elapsed between the taking possession of the land and the erection of the improvements. That is to say, a complete equity, which is, for many purposes, the equivalent of a legal title, depends upon the erection of valuable improvements and not the duration of the possession. If Mrs. Mayo went into possession in 1895, and had erected valuable improvements upon the faith of the parol gift of her father before the timber lease to the plaintiffs was executed, her equity in the land was complete, although only a space of three years had elapsed.

3. It is said, though, that even if it be established that both Mrs. Mayo and Mrs. Meadows acquired title from their father to the respective tracts of land claimed by each, and the plaintiffs were charged with notice of that title by the fact that these defendants were in possession of the land at the time that the plaintiffs received their timber lease, the defendants are estopped from setting up title as against the plaintiffs' lease, for the reason that at the date of the death of their father there was a balance due on the purchase-money of the timber, amounting to several thousand dollars, which was paid by the plaintiffs to his executor, and distributed by the executor among the heirs at law, and that Mrs. Mayo and Mrs. Meadows each received a portion of such purchase-

money. The judge charged the jury that if Mrs. Mayo and Mrs. Meadows received from the executor a portion of the purchase-money for the timber, with knowledge of the fact that it was such purchase-money, they would be estopped from asserting their title to the timber as against the plaintiffs. Error is assigned upon this charge, because the judge used the word "knowingly," in reference to the receipt from the executor of the money which had been collected on the purchase-price of the timber. We think the rule as laid down by the judge is correct. Whatever may be the right of the plaintiffs to require an accounting, as against the defendants who have received the purchase-money of the timber to which they now assert title as against the plaintiffs, so as to ascertain the amount of such purchase-money that has been received by them, and recover the same, there is no estoppel. The defendants would not be estopped unless it appeared that they knew, at the time they received the money, that it was a portion of the purchase-money of the timber upon the land claimed by them. If they permitted their father to sell their timber, or if he sold it without their permission, and, with full knowledge of the fact that he had dealt with it as his own, they received the proceeds of the sale of the timber which was upon their lands, they could not, in good conscience, withhold from the purchaser the timber and also retain the purchase-money. But if, at the time they received the money, they were ignorant of the fact that it was a portion of the purchase-money, while they might be liable to account to the plaintiffs for the money so received, they would not be estopped from asserting their title to the timber. They could not knowingly accept the purchase-price of the timber on their land and then say that the transaction, by virtue of which their father, or his executor, had received it, was unauthorized and not binding upon them. Neither equity nor good conscience would permit them to repudiate the transaction and at the same time take from the plaintiffs the substantial benefits. If they did not have knowledge of the facts, they would, upon proper pleadings, be liable to account for so much of the value of the timber on their lands as was received by them, with interest thereon.

There was nothing in the pleadings or in the evidence in this case authorizing or requiring an accounting. The defendants set up their title. The plaintiffs asserted an estoppel. Whether the

estoppel was operative depended upon whether the defendants had knowledge and the evidence authorized, even if it did not demand, a finding that there was no knowledge of the facts at the time the defendants received the purchase-money from the executor. See, in this connection, *Lamar* v. *Pearre,* 90 *Ga.* 378 (5) ; *Smith* v. *McWhorter,* 123 *Ga.* 287 (4) ; *DeVaughn* v. *McLeroy,* 82 *Ga.* 688 (4) ; Deford *v.* Mercer, 24 Iowa, 118 (92 Am. Dec. 460) ; Knutson *v.* Vidders, 102 N. W. 433. The defendants were not estopped from asserting their title, but in equity and good conscience they can not hold the land and the proceeds of the sale. If they assert their title to the land, they are liable ·to account to the plaintiffs for whatever sums, representing the purchase-money of the timber on their land, were received by them from the executor. They say they did not know that they had ever received any of this purchase-money. The plaintiffs assert that the executor and defendants received the balance due on the purchase-money. The burden was therefore upon the plaintiffs to establish their claim for the amount that, in equity and good conscience, the defendants were liable to them. Nowhere in the pleadings or evidence does there appear anything to indicate what this amount would be; and whatever may be the rights of the plaintiffs, in another suit, in reference to the amount so received, the judgment in the present case will not be reversed in order to allow an accounting, when no claim for an accounting was set up by the plaintiffs in their suit. The plaintiffs simply attempted to estop the defendants. In this effort they have failed. Their right to call for the return of whatever sum may be, in equity and good conscience, due to them from the defendants, growing out of their title to the timber having been defeated by the defendants' assertion of title, must be left to be determined in another proceeding, upon proper pleadings. In *Lamar* v. *Pearre,* supra, the judgment was reversed, and the court practically directed that upon another trial an accounting should be had. If the judgment were reversed in the present case, such direction would be given; but the judgment will not be reversed merely for the purpose of having an accounting. Nothing in the judgment in the present case will prevent an accounting, as the issue now determined involves simply the question of estoppel.

4. But it is said that the defendants were seeking equitable relief against the plaintiffs, and that therefore they must do equity,

and that it was incumbent upon them to ascertain the amount of the plaintiffs' money that they had received, and tender it back before they could obtain a decree in their favor. While the plaintiffs have resorted to a court of equity to obtain relief against the defendants, the defendants are entitled to defeat the claim for equitable relief, by showing that the plaintiffs have no title to the property, but that the title is in the defendants. That is to say the defendants may assert their legal title as against the plaintiffs' equitable claim. The defendants are not the movants in the matter. They have not appealed to a court of equity for relief. They relied upon their legal title to defeat the plaintiffs; and, in order to secure the benefit resulting from their ownership, it is not incumbent upon them to do anything more than to establish that they are, in law, the owners of the property. It is not incumbent upon them, in the assertion of their legal title to the property, to do anything more than to establish the fact that the legal title in them exists. So far as their assertion of title is concerned, they are seeking no equitable relief whatever against the plaintiffs. It is true that they filed an answer in the nature of a cross-bill, in which they prayed an injunction, and the principle that the plaintiffs invoke would be applicable so far as that portion of the answer is concerned; and if this principle had been invoked before the judge on the application for injunction, the judge, no doubt, would have recognized the same and refused to grant the injunction until they had recognized the equitable right of the plaintiffs to the money, whatever amount it may have been that they had received from the executor. But the injunction was granted, and no exception has been taken to that ruling. The case, at its present stage, does not involve any part of the answer which calls for equitable relief on behalf of the defendants. The time for final hearing had arrived, the plaintiffs asserted title to the property, the defendants denied this and set up title in themselves, and this was the only issue submitted to the jury. The defensive part of the answer involved the question of title. The answer in the nature of a cross-bill, it is true, prayed for equitable relief, and this equitable relief would be dependent upon the defendants doing equity; but the right of the defendants to rely upon the defensive portion of their answer which sets up a pure legal defense was not dependent upon any principle of equity. In the case of *Charles-*

*ton Ry. Co.* v. *Hughes,* 105 *Ga.* 1, the maxim that "he who asks equity must do equity" was applied for the reason that the plaintiff was seeking the aid of a court of equity to obtain the relief desired; and in such cases the maxim is always applicable, whether the relief in that court be legal or equitable. In this case the defendants were asking no equitable relief, so far as their assertion of title was concerned, and the maxim, while applicable to the answer in the nature of a cross-bill, was not applicable to that portion of the answer which was purely defensive.

5. Complaint is made that the court charged the jury that before the plaintiffs could recover, it was incumbent upon them to prove and establish, by a preponderance of evidence, the cause of action set out in their petition, and that if they failed to do so, they would not be entitled to recover. While this is conceded to be a correct statement of the general rule, it is claimed that it was prejudicial in the present case, for the reason that the attorney for the defendants was permitted to argue to the jury that the plaintiffs could not recover unless they proved damages as laid in their petition. While no extract from the charge of the judge is set forth, in the several grounds of the motion relating to the subject above referred to, other than the one above-mentioned, it is alleged in the motion that the court submitted the case to the jury on the theory that unless the plaintiffs proved the damages as laid in the petition, they were not entitled to recover; thereby depriving the jury of the right to pass upon the ownership of the timber. The entire charge of the judge is in the record, and, at its very outset, he distinctly states to the jury that the issue to be determined by them is whether or not, under the timber lease, title to the timber passed, or whether the title is in the defendants. While we can not tell, from the grounds of the motion, exactly what transpired during the trial, as to the argument made, to which objection was urged, it does appear, from the charge, that the only issue submitted to the jury by the judge was the one above referred to. The charge, being the last expression of the judge in reference to the issues submitted, must be taken as conclusive of what were such issues; and the jury, as intelligent persons, must have understood that no matter what happened during the progress of the trial, the judge submitted to them only the issue contained in the charge.

The motion contains numerous assignments of error upon the

instructions of the judge,. but the questions thus raised are all embraced in the discussion in the foregoing divisions of this opinion. Two of the grounds of the motion for a new trial relate to objections to evidence. The evidence objected to is not set forth in the grounds, and, of course, these can not be considered. The charge of the judge, when taken in its entirety, fairly submitted the issue of title to the jury, which was the only question then before them. The evidence authorized the verdict, and no sufficient reason has been shown for reversing the judgment.

> *Judgment affirmed. All the Justices concur.*