## MOORE v. OATES.

### Opinion delivered April 12, 1920.

1. TRUSTS—CONSTRUCTIVE TRUST—EVIDENCE.—Preponderance of the evidence held not to establish a constructive trust as to certain land.

2. TRUSTS—FRAUDULENT PROMISE TO RECONVEY.—One who procured a deed of land to himself by an express agreement to reconvey to the grantor *held* a trustee for the grantor.

3. TRUSTS—NOTICE OF CONSTRUCTIVE TRUST.—Continued occupancy by a former owner for several years after he had executed an absolute deed is sufficient to put a prospective purchaser on notice of a constructive trust in favor of such former owner.

Appeal from Jefferson Chancery Court; *John M. Elliott,* Chancellor; reversed in part; affirmed in part.

*Oscar Winn* and *Danaher & Danaher,* for appellants.

Plaintiff was not an innocent purchaser. Defendants were in actual possession and plaintiff knew it and saw the improvements defendants had made and saw them living in the houses on the land and inquiry would have disclosed their title. Actual possession under an unrecorded deed is notice. 90 Ark. 149; 54 *Id.* 281; 96 *Id.* 512, 520; 101 *Id.* 163.

*Caldwell & Triplett,* for appellee.

1. The burden is on appellants to show that the findings of the chancellor are against the preponderance of the evidence, and they have signally failed. Appellee Oates used due care in making the purchase. The abstract showed a clear title in Howell, except as to the question of adverse possession and minor heirs. The character of the land, its cultivation and improvements and the nature of the possession were not of such character as to give notice that anyone was making the land their home and making a crop. Oates was really an innocent purchaser without notice and here the adverse possession was not such as to give constructive notice, as the actual occupancy was not such as to make it visible or even put one on inquiry. Actual notice will only be imputed where it is a reasonable, just inference from the visible facts. 20 N. Y. 400; 16 Ark. 543; 11 N. J. Eq. 492; 37 Ill. 210; 15 Ill. App. 427. Appellee was only chargeable with what diligent inquiry would have revealed and appellants were telling all questioners it was Shaw's land. The Moores made no claim to the land whatever and inquiry would have been unavailing. 13 L. R. A. (N. S.) 68. The doctrine of constructive notice does not apply here and there is no proof of actual notice.

2. Even if it is held that appellant's possession was such as to constitute constructive notice, still appellants are not entitled to relief, for they are not in equity with

clean hands. 48 Ark. 409. Appellants admit that the execution of the deed to Shaw was to deceive persons interested in the real ownership of the land to make Shaw appear the real owner, with the secret understanding that Shaw was later to deed back the land to them.

The doctrine of possession as to constructive notice can certainly have no application as to Shope, but the doctrine of estoppel was never more plainly exemplified. Shope was a *bona fide* purchaser; and if he was, then constructive notice by possession is unavailable against Oates, but if Shope be held not to be a *bona fide* purchaser Oates ought not to suffer for the wrongful acts of appellants. Appellants put it into Shaw's power to perpetrate the fraud; and where one of two innocent parties must suffer, the loss should fall on him who made the loss possible. 42 Ark. 473. One who places title in another for the purpose of hindering or delaying creditors can not invoke the doctrine of possession as notice of his rights against an innocent purchaser. 32 Ore. 336; 51 Pac. 640; 4 A. L. R. 21; 36 Iowa 644. Appellants are beyond the pale of equity. 35 Ark. 365; 33 *Id.* 468.

McCULLOCH, C. J. This appeal involves two entirely separate controversies between appellee on the one side and appellants Moore and Buckner on the other side concerning the title to two different tracts of land claimed respectively by appellants.

Appellee brought two separate actions against the two appellants, or rather the three appellants, Paralee Moore, the wife of appellant, Isom Moore, being joined as a defendant in the suit against him. The actions were originally instituted at law, but without objection were transferred to the chancery court and were consolidated and proceeded there to final decree, which was in favor of appellee, for the recovery of each of the tracts of land involved in the controversies.

The land in controversy is situated in Jefferson County, fronting on the Arkansas River, near the town of Redfield. Each of the tracts forms a part of the south half of section 1, township 3 south, range 11 west.

It seems that this subdivision was, many years ago, surveyed out into lots, described respectively as lots one, two, three, four, five and six, of the south half of section one in said township. Lot two is the tract claimed by appellant Buckner, and appellee's action against him was to recover possession of that tract.

The testimony tends to show that Buckner purchased this land more than twenty years ago and occupied it, but lost his title deed, and in the year 1904 he donated it from the State of Arkansas, the tract having been forfeited to the State for the year 1897 for the nonpayment of taxes. Buckner built a small dwelling house on the place many years ago, and has occupied it continuously as his home up to the present time.

The land claimed by appellant Isom Moore is described as the southwest quarter of the southeast quarter (SW¼ SE¼) of said section 1, and he also claims under a purchase from the State of Arkansas under a forfeiture for the nonpayment of taxes.

A considerable quantity of land has been formed to the original south half of section 1 by the shifting of the channel of the Arkansas River. There is no controversy, however, between the parties as to the method by which the land was formed, and it seems to be conceded that the formation was by gradual accretion or reliction.

Lots 4, 5 and 6 were originally owned by J. T. Kirklin, and Kirklin sold and conveyed the same to A. D. Shope in the year 1913. A controversy arose between Shope and Isom Moore as to the ownership and possession of the southwest quarter of the southeast quarter of section 1. Moore owned a tract containing forty acres in section 12, which adjoined section 1 on the south, and Moore's dwelling house was on that tract. A small clearing, according to the evidence not over an acre or two, extended over on to section 1. Shope claimed the land under his purchase from Kirklin and put up notices warning trespassers to stay off the land. He contested Moore's right to occupy the land and notified the latter to keep off the land.

On February 17, 1914, Isom Moore and his wife, Paralee, conveyed the southwest quarter of the southeast quarter of section 1 by absolute deed to J. M. Shaw, an attorney at Pine Bluff. The deed conveyed the land, as before stated, without restriction and in fee simple and recited the payment of a cash consideration. Buckner also conveyed his tract of land to Shaw by deed dated February 11, 1914, reciting a cash consideration. This deed was also absolute in form.

Both Moore and Buckner contend that while their respective deeds to Shaw were absolute in form, they were not so intended, but were executed to Shaw for the purpose of having him hold the title for them in an effort to straighten the title and protect it from the attacks of others and to pay the expenses, and under the express agreement that when the attacks upon their title were successfully defended the land should be reconveyed to them by Shaw. Moore and his wife also claimed that when they executed the deed they did not know that it was in the form of an absolute conveyance, but thought it was a mortgage. Buckner was having trouble at the time with respect to a forfeiture of his land for taxes, and he claimed that the purpose of his conveyance was to have Shaw "stand in front of him" and protect his title. Buckner and Moore are negroes.

According to the testimony in the case, the two deeds were executed upon the suggestion of Shaw contained in a letter addressed by him to Moore and Buckner, which said letter reads as follows:

"I am sending you deeds of your lands to me so I can act as owner in the matter. It is my plan to send wire and have the land fixed so we can work it this year. Isom's deed only covers the disputed forty acres. This will put the land in my name, and give you the benefit of my influence. Then I can spend whatever is necessary and hold the land for expenses and what I charge for straightening it out. When all is settled, I will deed it back to you. Yours truly, J. M. Shaw."

Shaw sold and conveyed Isom Moore's land to Shope, by deed. dated June 18, 1915, for a cash consideration of $100, and by deed dated September 21, 1916, Shaw conveyed the Buckner land to Shope for a cash consideration of $250. Shope sold the land to J. S. Howell and conveyed the same by a deed dated September 16, 1916, for a valuable consideration. This deed included the lands purchased by Shope from Kirklin as well as the two tracts conveyed to him by Shaw and claimed by appellants. Howell sold the same land to appellee Oates for a valuable consideration and conveyed the same by deed dated February 6, 1917.

The chancellor decreed in favor of appellee on the ground that appellants voluntarily conveyed their respective tracts of land to Shaw by deeds in absolute form and that appellee was an innocent purchaser without notice of the claim of appellants that their deeds were not intended as absolute conveyances in fee simple.

The two controversies are separate and distinct and the decision with respect to each depends upon different testimony, though the conveyances to Shaw and his conveyances to Shope formed the basis of the controversy in each suit. We are of the opinion that the decision of the chancellor in appellee's favor with respect to the land claimed by appellant Moore and wife is correct. The testimony fails to show with any degree of satisfaction that the deed to Shaw was executed as a mortgage or that Shaw violated his trust agreement in conveying the land to Shope. There is not even a preponderance of the evidence in favor of those appellants on that issue. Shope testified that when the controversy was on between him and Moore he talked to Moore about the latter's claim and that Moore told him that he had conveyed the land to Shaw and that Shaw was the owner with authority to make any disposition he saw fit of the land. Shope says Moore told him to go to Shaw about it, that whatever Shaw did about it would be all right, and that pursuant to the statement he went to Shaw and adjusted the controversy between them by purchasing the land from

Shaw. It is true this testimony is contradicted by the Moores, but it can not be said that a preponderance is against the finding of the chancellor on the issue. In fact, the testimony of Shope is strongly corroborated by the testimony of other witnesses, to the effect that both Moore and his wife made repeated statements that they had conveyed the land to Shaw with authority to do as he pleased with it, for the purpose of saving for them the forty-acre tract in section 12.

Paralee Moore seems to have been the moving spirit in the controversy and acted for herself and her husband in the whole transaction. The testimony of two witnesses who were entirely disinterested tended to show that according to the statements of Moore and his wife to them the conveyance to Shaw was made for the purpose of enabling Shaw to protect the title to the forty acres of land in section 12, and that Shaw was authorized to convey the tract of land in controversy.

It is unnecessary to discuss the testimony in the case bearing on the question of notice to appellee of the claim of Moore and his wife to this tract of land, for we think the decree of the chancellor on this branch of the case was correct, leaving out of consideration the question of appellee's attitude as an innocent purchaser.

But the testimony is different as to the claim of Buckner, and the decree as to his branch of the case must stand or fall on different testimony. The evidence is sufficient to justify the application of the doctrine of trusts *ex maleficio* to the transaction between Buckner and Shaw. The written correspondence between the parties shows plainly the purpose for which this conveyance was made, and there is no testimony in the record which tends to vary that purpose or to show that there was any different purpose in the conveyance, or that Buckner ever authorized any other disposition of the property. The evidence, in other words, shows that Shaw in conveying the Buckner land to Shope violated the terms of his trust, whereby he had expressly agreed to reconvey the land to Buckner. The conclusion is justified that he obtained

the title by fraud and that the conveyance to Shope was not authorized by Buckner and was in fraud of the latter's rights.

"A second well-settled and even common form of trusts *ex maleficio*," says Prof. Pomeroy, "occurs whenever a person acquires the legal title to land or other property by means of an intentionally false and fraudulent verbal promise to hold the same for a certain specified purpose, as, for example, the promise to convey the land to a designated individual, or to reconvey it to the grantor, and the like, and having thus fraudulently obtained the title, he retains, uses and claims the property as absolutely his own, so that the whole transaction by means of which the ownership is obtained is in fact a scheme of actual deceit. Equity regards such a person as holding the property charged with a constructive trust and will compel him to fulfill the trust by conveying according to his engagement." 3 Pomeroy's Equity Jurisprudence (4 ed.), § 1055.

This doctrine and its limitations are fully set forth in repeated decisions of this court. *Ammonette* v. *Black,* 73 Ark. 310; *McDonald* v. *Tyner,* 84 Ark. 189; *Bragg* v. *Hartney,* 92 Ark. 55; *Veasey* v. *Veasey,* 110 Ark. 389.

We find no evidence in the record of admissions on the part of Buckner which would justify a decision that he is estopped to dispute the right of Shaw to convey the land. Shope testified that Shaw represented to him that he owned the land and had authority to sell it, but he did not testify that Buckner said or did anything which was calculated to induce a belief in his mind that Buckner was making no claim to the land.

The remaining question, therefore, is whether or not Oates or his predecessors in title were innocent purchasers, for if either of them purchased the land without notice of appellant Buckner's claim, or without information as to facts reasonably calculated to put them upon notice, then appellee is entitled to protection as an innocent purchaser.

We have examined the testimony in the record very carefully and are fully convinced that appellee purchased the land in good faith and paid a valuable consideration for it, and that he had no actual notice of Buckner's claim to the land. But the testimony shows beyond dispute that Buckner was in possession of the land at the time appellee purchased from Howell and the question arises, not whether appellee actually knew of Buckner's claim, but whether the circumstances were such that he was bound to take notice of the claim. When appellee was preparing to purchase the land, an abstract of title was furnished to him by Howell, his vendor, and he submitted the abstract to his attorney for approval. The attorney required affidavits as to the possession of Howell and as to the formation of the adjoining lands by accretion. Appellee went down to Redfield with Howell and Shope for the purpose of procuring the affidavits, and several affidavits of residents were taken, showing that the lands were formed by accretion; that Howell was the owner, and that there were no adverse claimants or occupants. Buckner and his wife were living in the house on this land at that time, and appellee concedes that he saw a negro woman at the house, who he afterward understood was Buckner's wife. He did not, at that time, know the woman's name, but was told by Howell that the houses on the land were occupied by tenants. There is no reason to doubt the good faith of appellee in accepting these statements, but he knew there was an actual occupancy of the premises and he should have pursued the inquiry to the extent to ascertaining from the occupants themselves the character of their possession. Whether appellee actually knew of the occupancy of Buckner or not, he was bound to take notice of it.

The deed of Buckner and wife to Shaw was in the line of appellee's title and he was bound to take notice of that. The deed was executed on February 11, 1914, and Buckner and wife, the grantors, remained in actual possession of the land up to the time of appellee's purchase from Howell in February, 1917, a period of about three

years. There is no uncertainty in the law with respect to presumptions and inferences to be drawn from the continuance in possession of a grantor after the date of his conveyance.

The following statement of the law on that subject is found in a decision of this court in *Turman* v. *Bell,* 54 Ark. 273:

''If the possession has continued after the making of the deed but a short time, it might be reasonably referred to the sufferance of the grantee; but where it was long continued, it would much more strongly imply a right in the occupant, and the implication would be sufficient to cast upon strangers the duty of inquiry. Where the lands were used for agriculture and sold during a crop season, it would not be reasonable to presume that the grantee would permit the grantor to hold by sufferance after the time when lands were usually entered upon for the purpose of next year's cultivation; and possession continued after that time could not be explained upon the presumption of sufferance.''

The same doctrine has been reiterated in subsequent cases. *Morgan* v. *McCuin,* 96 Ark. 512; *American Bldg. & Loan Assn.* v. *Warren,* 101 Ark. 163.

Buckner's possession was actual and was of a nature to put everyone on notice as to his claim. He actually resided on the land, and, though his dwelling house was but a poor one, it was sufficient to give notice of his asserted rights. There were also other buildings on the land and there can be no doubt that under the law the occupancy was sufficient to give notice of the claim of ownership, such notice of actual occupancy as to put upon inquiry those who sought to purchase the land from one having the record title. There is, therefore, no escape from the conclusion that, notwithstanding appellee's perfect good faith and his innocency of any actual notice of Buckner's claim, there was enough in Buckner's occupancy of the land which charged him with notice of the latter's claim.

For this reason the decree of the chancery court against Buckner is reversed and the cause remanded with directions to dismiss the complaint for want of equity. The decree against appellants Moore and wife is affirmed.