## BREWER *v.* YANCEY.

### Opinion delivered November 16, 1925.

1. APPEAL AND ERROR—CONCLUSIVENESS OF CHANCELLOR'S FINDING.—A chancellor's finding of facts upon testimony evenly balanced will not be disturbed on appeal.

2. VENDOR AND PURCHASER—INNOCENT PURCHASER.—Where the owner of the fee in land, after making an absolute conveyance to a bank, remained in possession, one who, after ascertaining that the record title was in the bank, made inquiry of the grantor in possession and was informed that the land belonged to the bank, and thereafter bought the land from the bank, was entitled to protection as an innocent purchaser, though the owner of the land at the time inquiry was made stated that the fee was in his children because his deed was to him "and his heirs."

3. MORTGAGES—ABSOLUTE CONVEYANCE AS MORTGAGE—ACCOUNTING.—Where a deed in form an absolute conveyance is treated as a mortgage, equity will require the grantor as a condition of redemption to pay the whole of his debt to his grantee, and not merely the consideration expressed in the deed.

Appeal from Conway Chancery Court; *W. E. Atkinson,* Chancellor; affirmed.

*Coulter, McHaney & Coulter,* for appellant.
*M. H. Dean* and *Calvin Sellers,* for appellee.

McCULLOCH, C. J. This case has been here on a former appeal, and in the opinion of the court (159 Ark. 257) the facts are set forth in detail. It is only necessary to make a very brief outline now of those facts in order to understand the questions presented on the present appeal.

William Brewer, an old negro, was the owner of a tract of farm land in Conway County, containing 627 acres, and on February 1, 1910, he mortgaged the land to the Bank of Plumerville to secure a note in the sum

of $4,500, which included money advanced to pay off an antecedent debt to a business concern in Plumerville and for estimated future advances to be made during the crop season. Brewer was unable to pay the debt, and on March 4, 1911, he and his wife executed to the Bank of Plumerville a deed with full covenants of warranty conveying the land to the Bank of Plumerville for a recited consideration of $4,000. The deed was in absolute form and purported to convey the title in fee simple. Brewer remained in possession of the land for several years, and finally the Bank of Plumerville sued him at law to recover possession, and the cause was transferred to equity on Brewer's cross-complaint alleging that the deed, though absolute in form, was in fact executed as a mortgage to secure the original debt due to the bank. In the meantime the Bank of Plumerville had sold and conveyed to J. R. Yancey a part of the land containing 267 acres, and during the pendency of the action in the chancery court Yancey resold the land to Sam M. Yancey, one of the appellees. The bank also sold another portion of the tract to M. C. McKindra. It was the contention of the bank that the deed was an absolute conveyance, and that Brewer remained in possession as the bank's tenant. On the trial of the issues, Yancey and McKindra both claimed to be innocent purchasers without notice of any of Brewer's alleged equities. On the final hearing the chancery court rendered a decree finding that the deed to the Bank of Plumerville was intended as an absolute conveyance according to its purport, and was not intended merely as a mortgage, and entered a decree in favor of the Bank of Plumerville and its grantees. There was no finding made upon the question of Yancey and McKindra being innocent purchasers. Brewer's sons claimed an interest in the lands and were parties to that action, likewise Coulter and Williams, who claimed interests under conveyances from Brewer. All of them, together with Brewer, prosecuted an appeal to this court, and it was decided here that the evidence established the fact that the deed was executed as a mort-

gage, and not as an absolute conveyance, and the decree of the chancery court was reversed with directions to "render a decree to the effect that the deed in question is in fact a mortgage; to determine whether M. C. Mc-Kindra and Sam M. Yancey are innocent purchasers of the particular parcels of land purchased by them out of the 627-acre tract in controversy, and to state an account between William Brewer and the Bank of Plumerville, with permission to the parties to adduce additional testimony, if desired, upon the undecided issues."

Additional testimony was taken by the parties and submitted to the court, together with the original proof in the case, and upon final hearing the chancery court decided that McKindra was not an innocent purchaser, but that J. R. Yancey was an innocent purchaser of the 267-acre tract, and that his purchase inured to the benefit of his grantee, Sam M. Yancey, and the cause was then referred to a master to state the account between William Brewer and the Bank of Plumerville. Proof was taken before the master with reference to the state of the account, and on the report of the master the court overruled exceptions and rendered a final decree quieting the title of appellants to the land, except the 267-acre tract held by Yancey, and subject to the lien in favor of the Bank of Plumerville for the sum of $4,384.70, the balance found to be due on the mortgage debt to the bank.

The first and principal contention of appellants in urging a reversal of the decree is that the evidence does not support the finding that J. R. Yancey was an innocent purchaser. It is not contended that Sam M. Yancey bought without notice of the pending litigation with respect to the title, but his rights are based upon the claim that his grantor, J. R. Yancey, was an innocent purchaser, and that the purchase inured to his benefit. The question presented, then, is whether or not the evidence is sufficient to sustain the finding that J. R. Yancey was an innocent purchaser.

It is conceded that Yancey purchased the land from the bank prior to the commencement of this action and

long after the conveyance was executed by William Brewer to the bank, and that he paid the bank the sum of $3,200 as the purchase price. It is the contention that the price paid by Yancey to the bank was inadequate. This is urged as a circumstance to show that in fact he was not an innocent purchaser. That feature of the case will be discussed later when reached in determining the question whether or not the court allowed Brewer in the settlement a sufficient credit for the amount received by the bank in the sale of this land.

Yancey testified that he has lived in the community for a long time, was familiar with the land, and acquainted with Brewer, and knew that Brewer had been in possession of the land for a long time. He testified that, before he purchased the land from the Bank of Plumerville, he made inquiry as to the record title and inquired of the officers of the bank, and also the attorney who had represented the bank in the dealings between it and Brewer, and that he also had several conversations with Brewer, one of which took place on the land about a month before the purchase, and that Brewer informed him that the land belonged to the bank. Yancey's statement of the conversation between him and Brewer is as follows: "I went to him in the cotton patch about a month before I made the trade for this land and asked him what he was going to do about the land. He said he wasn't going to do anything so far as he was concerned, that the land belonged to the Bank of Plumerville, or they claimed it that way. He said: 'As far as I am concerned, I am not going to do anything.' He said: 'When I die, my children will get the land if anybody buys it'. I asked him what plea his children would get this land back on, and he said that their dead mother hadn't signed the deed, that the old original deed was made to him and his heirs." Yancey testified to other conversations with Brewer prior to that time, in which Brewer made the statement to him that he had deeded the land back to the Bank of Plumerville, and that the bank was the owner. This is denied by Brewer, and

there is no other testimony in the record concerning these conversations except that of Yancey and Brewer. Counsel for appellants concede that the testimony concerning these conversations is evenly balanced, and this concession is, we think, fatal to their case. On that state of the case it becomes our duty to leave the finding of the chancellor undisturbed. We only reverse chancery cases when it is found that the finding of the court is contrary to the preponderance of the evidence. The decisions of this court establishing that rule are very numerous, and it is unnecessary to cite them.

It is contended that there are inconsistencies in Yancey's testimony which render it untrustworthy, and that we should not accept it. The same claim is made by appellees' counsel with respect to the testimony of Brewer. It is true that there are slight inconsistencies in the testimony of each of those witnesses, but they are not irreconcilable, and are not sufficient, we think, to break down the testimony of either. The testimony on this particular feature of the case seems to be so evenly balanced that we would not feel at liberty to disturb a finding of the chancellor either way. This calls for the application of the rule stated above, that a finding of the chancellor on disputed issues of fact will not be disturbed unless it is against the preponderance of the evidence. But it is contended by appellants that even if the conversation occurred as contended by Yancey, the statement made to him by Brewer was not, when considered with all the other testimony in the case, sufficient to constitute him an innocent purchaser. The contention is, as we understand, that Brewer's possession was sufficient to charge Yancey with notice of his equities, and that this was not overcome by the alleged statements made by Brewer to him before the purchase. It may well be asked, what more could Yancey have done to justify himself in purchasing the land? Yancey was aware of the fact that Brewer was the original owner, was then in possession and had been for a long time, but he was also apprised of the fact that Brewer had con-

veyed the land to the Bank of Plumerville. It was a matter of common repute in the neighborhood that Brewer owned the land but lost it—conveyed it to the bank. Yancey made inquiry and found that the record title was complete in the Bank of Plumerville. He made inquiry of the Bank of Plumerville as to their holding, and was assured that the title was good. He inquired of the attorney who had handled the affair for the bank, and received assurances that there was a complete title. Now, in order to make sure of his rights in purchasing the land, he made inquiry of the original owner, who was still in possession, and was told that the land belonged to the Bank of Plumerville. We ask, again, what more could he have done, to whom could he have applied for further information, and why was he not justified in accepting as true the statement made to him by Brewer? He knew that the record title was in the Bank of Plumerville, and was informed by the officers of the bank that the title was good, and the natural thing for him to do was to inquire of Brewer, who was in possession, and he did so, asking Brewer what he was "going to do about the land." Whatever information he had received from other sources, he found Brewer in possession, and the proper inquiry for him to make was, "what are you going to do about this land?" This was an inquiry calculated to elicit a statement from Brewer as to whether or not he was claiming the land, and, if so, what his claim was. The reply he received from Brewer was, "I am not going to do anything." It is true that Brewer qualified his statement by saying that when he died his children would get the land, and, upon further inquiry, explained that this would be so because the original deed was "made to him and his heirs." It seems that he had a crude idea that his interests was limited to a life estate on account of the use of the word "heirs" in the deed, and that upon his death the land would go in remainder to his children. Yancey took pains to submit this question to an attorney and received assurance that such was not the effect of the deed, and

that the record title in the Bank of Plumerville was perfect. The fact that Brewer made an unfounded statement to Yancey concerning the rights of his children does not lessen the effect of the other part of his statement to Yancey that he had deeded the land back to the Bank of Plumerville, and that the latter was the owner.

Counsel rely upon the decision of this court in *Moore v. Oats*, 143 Ark. 328, as sustaining their contention that the effect of Brewer's continued occupancy was not overcome by his statement to Yancey. That case does not, we think, support the contention of counsel, for the facts were that no inquiry was made at all of the person known to be in possession of the property in controversy. We said in that case that, notwithstanding the fact that Oats found the record title complete in his grantor, Howell, and was informed by Howell that Buckner, the occupant, was a mere tenant, he had no right to rely upon that information, but should have inquired of persons in possession as to what their equities were, if any. The difference between that case and this is marked, for, as we have seen, Yancey did the very thing that Oats failed to do, made inquiry of the occupant.

It is argued that, in view of our decision that Brewer had not conveyed the land to the Bank of Plumerville in fee, but that he intended the deed to operate as a mortgage, it is unreasonable that he should have made the statement to Yancey attributed to him, and that for that reason the chancellor's finding should be overturned. We cannot say that this circumstance renders it so inconsistent and unreasonable as to make Yancey's testimony as to this statement unbelievable. It is not impossible to reconcile Brewer's apparently conflicting statements with respect to the land. Notwithstanding his present contention, which has been sustained by the decision of this court, that he intended the conveyance to operate as a mortgage, yet he had intrusted the absolute title to the Bank of Plumerville, and it is not unreasonable to suppose that he was willing to hold them out as the absolute owners of the land. He had been unable to pay the

debt and may have been willing for the bank to sell some of the land to reduce the debt. Whatever his reasons may have been for making the statement which conflicts with his present claims, the chancellor was warranted in believing Yancey's testimony that he did make it—at least it was within the province of the chancellor to accept the statement that he believed to be true, and, as before stated, we cannot overturn the finding unless it is against the preponderance of the evidence.

Our conclusion is that the court was justified in deciding that Yancey was an innocent purchaser, and the decree in favor of Sam M. Yancey, quieting his title, is affirmed.

There is no appeal by McKindra from the decree against him; hence his claim has been eliminated from the case.

There are various assignments of error with respect to the items of the court's statement of the account between Brewer and the Bank of Plumerville. The appeal is also from that part of the decree.

It is contended that the court erred in directing the master to begin the statement of account from the date of the original mortgage instead of March 4, 1911, the date of the deed from Brewer to the bank. This contention is based upon the fact that the deed recited a consideration of $4,000, which is urged as conclusive of the amount of the debt at the time, and also that in the opinion of this court on the former appeal there is a statement that the deed "expresses the correct amount of the existing indebtedness," and that that was a conclusive finding by this court of the fact that the account should be stated from the date of the deed. Neither of these arguments is sound. In the first place, the recital of the consideration in the deed purporting to convey absolute title was not conclusive of the amount of the indebtedness. A court of equity in permitting a grantor to disregard the terms of his absolute deed and treat it as a mortgage, must require him to do equity by paying the whole of the debt. The court in disregarding the form

of the conveyance must necessarily do complete equity between the parties, and this can only be done by requiring payment of the whole of the original debt which the mortgage was given to secure. The mention in our former opinion as to the amount of the debt was a mere narrative of a fact not in issue on that appeal, and therefore there was no decision. The court expressly refrained from directing any decree as to the amount to be paid to the bank in redemption of the land from the mortgage, but the case was remanded with directions to permit the parties to adduce further testimony. Neither the trial court nor this court had made any finding as to the amount of the debt. We think the court was correct, therefore, in directing the master to hear testimony and ascertain the amount of the total indebtedness of Brewer to the bank at the time of the execution of the deed in controversy.

It is contended that the court erred in failing to allow rents on the land for certain years, but the answer to this contention is that the proof is not satisfactory that the rents were paid as credits on the debt. Brewer continued to do business with the bank and incurred further indebtedness and gave a chattel mortgage on his crops. The crops were turned over to the bank, but it was not shown that the proceeds should properly have been credited on the old indebtedness, rather than on the debt for current advances.

It is alleged also that, as Brewer was entitled to credit for the amount of the value of the land wrongfully sold to Yancey, the court failed to allow sufficient credit. In other words, there is a controversy as to the market value of the land, and the contention is that the land was worth more than the bank received from Yancey, and that therefore Brewer is entitled to credit for this excess. There was a sharp conflict in the testimony as to the market value of this land. The witnesses were very numerous, and they differed widely. It is unnecessary to set forth the testimony of the various witnesses, as it is sufficient to say that the finding of the chancellor was not

against the preponderance of the evidence. In fact, it appears to us from consideration of the testimony that there was a decided preponderance in favor of the chancellor's finding on that issue.

There are other assignments in regard to items of the account, but we answer the contention in regard to these items by saying that we have considered them fully and are of the opinion that, upon every issue presented, the evidence supports the finding of the chancellor—at least that the finding is not against the preponderance of the evidence.

Decree affirmed.