[Civil No. 2960. Filed February 24, 1931.]

[296 Pac. 260.]

ROY & TITCOMB, INCORPORATED, a Corporation, Appellant, v. D. N. VILLA, Appellee.

Messrs. Hardy & Hardy, for Appellant.

Mr. R. H. Brumback and Mr. E. B. Goodwin, for Appellee.

McALISTER, C. J.—This is an action by D. N. Villa against Catalina Villa, Catalina Villa as executrix of the estate of Lorenzo Villa, deceased, and Roy & Titcomb, Incorporated, praying for a decree establishing her title to certain real estate in Phoenix, Arizona, and canceling a mortgage thereon executed by Lorenzo Villa and Catalina Villa, his wife, to Roy & Titcomb, Incorporated.

The facts in the case are undisputed and may be briefly stated. In June, 1911, the plaintiff purchased a house and lot in the City of Phoenix from the O'Malley Lumber Company for $980 to be paid in monthly installments. Her son, Lorenzo Villa, advised her that she could not take or hold title to this property in her own name because she was not a citizen of the United States and believing this to be true, she, through and in his name, entered into a contract with the O'Malley Lumber Company for the purchase of said property and on that day made in the same way the initial payment of $20 on the purchase price. Immediately thereafter she went into possession of the premises, has lived thereon continuously from that date and out of her own funds, made by running a boarding-house, paid the full amount of the purchase price therefor, the last installment thereof having been made on December 18, 1919. At that time the O'Malley Lumber Company executed and delivered to her a deed conveying said premises, but her son, Lorenzo Villa, was named therein as grantee, though it was understood by those concerned that he was merely taking the title in trust for her. Since her occupancy began she has been in actual, open, undisputed and exclusive possession and she paid all taxes levied against it. On December 6, 1921, however, without her knowledge or consent and contrary to his trust, her son, Lorenzo Villa, together with his wife, Catalina Villa, executed

a mortgage on said premises to Roy & Titcomb, Incorporated, for $600 as security for their promissory note of the same date. This mortgage was recorded in the office of the county recorder of Maricopa county on December 12, 1921, but plaintiff had no actual knowledge of its execution until a short while before she filed this action in July, 1928.

The mortgage was given in payment of a past due account and before accepting it Roy & Titcomb, Incorporated, verified the statement of Lorenzo Villa that the property was free of debt by writing the county recorder of Maricopa county who replied saying that there were no liens or mortgages against it. Lorenzo, who did not live in Phoenix after 1913, told defendant at the time that he was maintaining the property but that his mother was living in the house, and that he was charging her no rent, and that she could have it for a home as long as she lived though he did not inform defendant, and it had no actual notice of the fact, that she claimed the property.

The case was heard by the court without the aid of a jury and at the close of the evidence judgment was rendered against Catalina Villa individually and as executrix. Some weeks later the same order was made against Roy & Titcomb, Incorporated, and it has brought the matter here seeking a reversal of the judgment against it.

The only error assigned is that the judgment is contrary to the law and the evidence. Appellant's position is that the evidence discloses that when it accepted the note and mortgage of Lorenzo Villa and wife it had no notice whatever, either actual or constructive, that appellee owned or claimed the property and, therefore, it was justified in dealing with him upon the theory that he was the owner of both the equitable and legal title. This contention is undoubtedly correct if it be true that appellant took

the mortgage in good faith for value without notice of appellee's interest. The latter, however, took the position that under the facts appellant was not a purchaser without notice, though she did not contend that it had actual knowledge of her ownership; merely that the facts were such that they gave it constructive notice thereof. If the circumstances were such that notice could be imputed, it is sufficient, and the particular fact relied on as having this effect is that appellee was at the time in actual, open, notorious and undisputed possession of the premises and had been since 1911. Practically all the authorities give assent to the proposition that the purchaser or mortgagee of land in possession of an occupant other than the holder of the record title is compelled to inquire of the occupant by what title he holds possession, or he will be held to have taken subject to whatever rights a proper inquiry would disclose the occupant had therein. "Actual possession of land," says 46 C. J. 547, "is such notice to all the world or to anyone having knowledge of such possession as will put upon inquiry those acquiring title or a lien on the land to ascertain the nature of the right that the occupant has in the premises." In *Rowe* v. *Ream,* 105 Pa. 543, the court quotes with approval this language:

"The possession of land is notice to the world of every title under which the occupant claims it, unless he has put a title on record inconsistent with his possession. When, as in this case, an individual is in possession under no recorded title, his possession is notice of every title which he can set up to protect himself, sufficient at least to put a purchaser on inquiry."

In *Oliver* v. *McWhirter,* 112 S. C. 555, 100 S. E. 533, 536, is found this language:

"One in possession under an equitable title has nothing that he can record; and possession, open and unconcealed, is the only mode by which he can give notice to the world of his rights; and when this notice is given, in the only way in which it could be given, he should be protected."

In *Carolina Portland Cement Co.* v. *Roper,* 68 Fla. 299, 67 South. 115, 116, the court says:

"Actual possession of land is such notice to all the world or to anyone having knowledge of such possession as will put upon inquiry those acquiring title to or a lien on the land to ascertain the nature of the rights the occupant really has in the premises. One who acquires title to or a judgment lien on land with constructive notice of the actual possession and occupancy of the land by one other than the vendor or judgment debtor takes subject to such rights as proper inquiry will disclose the occupant of the land actually has therein. Possession, in order to be constructive notice of a claim of title to the land occupied, must be open, visible, and exclusive; and such occupancy may be shown by any use of the land that indicates an intention to appropriate it for the benefit of the possessor."

The following are to the same effect: *Petrain* v. *Kiernan,* 23 Or. 455, 32 Pac. 158; *Follette* v. *Pacific Light & Power Corp.,* 189 Cal. 193, 23 A. L. R. 965, 208 Pac. 295; *McVey* v. *McQuality,* 97 Ill. 93; *Moore* v. *Oates,* 143 Ark. 328, 220 S. W. 657; *Niles* v. *Cooper,* 98 Minn. 39, 13 L. R. A. (N. S.) 49, 107 N. W. 744; *Garbutt* v. *Mayo,* 128 Ga. 269, 13 L. R. A. (N. S.) 58, 57 S. E. 495; *Ross* v. *Hendrix,* 110 N. C. 403, 15 S. E. 4; *Wood* v. *Price,* 79 N. J. Eq. 620, Ann. Cas. 1913A 1210, 38 L. R. A. (N. S.) 772, 81 Atl. 893.

Appellee contends that it conclusively appears from the statement of Lorenzo Villa to appellant, when the note and mortgage were executed, that it had both actual and constructive notice of appellee's possession and occupancy of the premises. Whether this be true

or not is immaterial because it was the duty of appellant to ascertain who was in possession of the property before purchasing an interest therein. As said by the court in *Sheerer* v. *Cuddy,* 85 Cal. 270, 24 Pac. 713, 714:

"Whether the respondent knew of the appellant's possession or not is immaterial. It was his duty to know who was in possession of the property before making the purchase, and his purchase without ascertaining the fact must be regarded as the strongest evidence of bad faith on his part. The burden of making the proper inquiry was cast upon him by the mere fact of actual possession on the part of the appellant. If it were allowed that, by failing to acquaint himself with the fact of possession on the part of another than the vendor, the vendee could avoid the effect of the rule above stated, he could purposely avoid any inquiry on the subject, and thereby evade the rule and its consequences entirely."

Finding no error in the record the judgment is affirmed.

ROSS and LOCKWOOD, JJ., concur.