WILLIAM McRAREY and JOHN A. HUFF, plaintiffs in error,
  *vs.* JOHN D. HUFF, *et al.*, defendants in error.

1. N. H. and L. H. caused it to be publicly announced, at the sale of
  lands belonging to the estate of their deceased father, that they and
  their three brothers were homeless; that provision had been made
  for the other heirs-at-law of the deceased, and that they wished to
  buy the lands for the joint use and benefit of themselves and their
  three brothers. By the announcement, bidding at the sale was sup-
  pressed, and N. H. and L. H. bought the lands for greatly less than
  their value, and shortly thereafter sold them at a large profit: *Held,*
  that equity will compel them to account to their three brothers for the
  interest of the latter.

Bill in equity, in Talbot Superior Court, and decision by
Judge WORRILL, at September Term, 1860.

Donaldson Huff, the elder, died intestate, leaving consider-
able property, and James Huff obtained letters of adminis-
tration on his estate. The intestate had been twice married,
and left a widow and several children of tender age, and this
widow received and accepted the sum of $1500 00 in lieu
of her dower, with which she expected to, and did, provide
a home for herself and children. The deceased also left
surviving him five unmarried children by his first wife,
to-wit: Nancy Huff, Louisa Huff, John D. Huff, William
Huff, and Donaldson Huff, junior, the first three being of full
age and the last two being infants, under twenty-one years of
age. When certain lands belonging to the estate of the
deceased were brought to sale by the administrator, Nancy
Huff and Louisa Huff being present, caused it to be pro-
claimed and announced to the crowd assembled at the time
and place of said sale, that provisions aforesaid had been
made for the intestate's widow and her children, and that
the said Nancy, Louisa, John D., William and Donaldson,
were destitute of a home, and that they, the said Nancy and
Louisa, desired to purchase the lands for the joint benefit of
themselves and their three unmarried brothers aforesaid.
This announcement was made for the purpose of suppressing
competition at said sale, and actually had the effect of en-

abling the said Nancy and Louisa to bid off and purchase the lands for less than their real value, by $1,050 00. A short time after the sale, the said Nancy and Louisa concluded that it would be better for them and their said three brothers to board out, rather than .to undertake to keep up a home, and pursuant to this conclusion they agreed with one Isaac Cheeny to allow him to take the lands and assume their indebtedness to the administrator, and give to the said Nancy and Louisa his note for $1,050 00 besides. This arrangement with Cheeny was carried out, and he did assume said indebtedness, and did give to said Nancy and Louisa his note for the sum aforesaid, with the express understanding that such arrangement was to enure to the joint benefit of the said Nancy and Louisa and their said three brothers. After this, and whilst the note remained unpaid, the said Nancy intermarried with one John A. Huff, and the said Louisa intermarried with one William McRarey. Cheeny's note being nominally payable to the said Nancy and Louisa, John A. Huff, the husband of said Nancy, brought suit against Cheeny for one-half the sum due on the note, and at the March Term, 1859, recovered a judgment for $606 00, from which execution issued and upon which Huff was proceeding to collect the money for his own benefit.

On the 22d August, 1859, John D. Huff, in his own name, and William Huff and Donaldson Huff, by their *prochein ami*, Isaac Cheeny, exhibited their bill in equity, in Talbot Superior Court, against John A. Huff and William McRarey, alleging the facts hereinbefore detailed, and praying that Huff should be restrained from collecting the money on said judgment, and that he and McRarey should be compelled to account to the complainants for their share of the said note. The injunction issued as prayed for, and the defendants met the bill with a demurrer, on the ground that it contained no equity.

After argument, the Court overruled the demurrer, and maintained the bill, and that decision is the error complained of.

INGRAM & RUSSELL, for plaintiff in error.

SMITH & POU, *contra.*

*By the Court.*—JENKINS, J., delivering the opinion.

The sole question presented by this record is, whether there be any equity in complainants' bill?

At the time of the administrator's sale, out of the circumstances of which their application for relief grows, complainants were minors, incapable of asserting their rights or defending their interests. Their sisters (the wives of the defendants below) were the principal actors in the transaction, and their husbands, have succeeded to whatever rights and liabilities they acquired and incurred thereby. They made known to the administrator of their deceased father, and caused it to be proclaimed at the sale that they proposed to purchase the tract of land in question for themselves and their minor brothers, the complainants, and thereby suppressed competition in bidding. The consequence was that they purchased the land for less than it was worth, and immediately thereafter resold it for a profit. The purchaser from them, by arrangement, paid to the administrator the amount of their bid, received a title directly from him, and gave to the sisters, Nancy and Louisa, his note for $1050 00, this being their profit on the purchase and re-sale of the premises and the fund now in dispute. At the time of the re-sale, and taking the purchaser's note, they stated to him that they would hold that note, and the money, when collected, for the common benefit of themselves and the complainants, and it is precisely this appropriation of the fund upon which the latter now insists. It is objected, on the part of the plaintiffs in error. that their wives made no contract with the defendants, who were incapable of contracting. True, but they voluntarily assumed a trust for them, and in that character contracted with the administrator and with Cheeny, to whom they afterwards sold the land. They paid out no money of their own, but dealt freely with property in

which the complainants had, with themselves, a common right of inheritance.

It is further said, that for their undertaking they received no consideration, and are therefore not bound by it.

By the public declaration of a trust assumed at the time of the sale, they purchased the property for less than its value, and the consideration paid to the administrator was thus reduced, and the fund in his hands for distribution lessened. The distributive share of each heir-at-law was lessened in proportion. Thus the act of the purchaser was a positive detriment to the defendants in error, *as heirs-at-law* of the intestate. To the same extent the sum coming to their hands from the sale of the land was increased. So that, if it be necessary to search for a legal consideration, it may be found, either in the benefit derived by the promisor or injury resulting to the other party. 1 Parsons on Contracts, 359, and the authorities cited in note C. It is again said, that the undertaking was not binding on them, because there was no mutuality in it, the infants not being bound thereby. But to the rule requiring mutuality of obligation, there is an exception in favor of infants. 1 Parsons on Contracts, 277.

It was clearly admissible for defendants in error to acknowledge the trust and insist upon its execution. It is not the privilege of those who assumed it, to renounce it at pleasure, and appropriate the profits resulting from its assumption. We think the equity of the bill clear and strong.

Let the judgment be affirmed.