10099, 10100.　ADAMS v. SHEWMAKE BROTHERS COMPANY and
*vice versa*.

BROYLES, P. J.　This was an issue formed by a dispossessory warrant and
a counter-affidavit.　In an amendment to the counter-affidavit the de-
fendant admitted a prima facie case for the plaintiff, set up an affirma-
tive defense, and assumed the burden of proof.　The evidence adduced
failed to overcome the prima facie case thus admitted and to sustain the
affirmative defense.　On the contrary, the evidence, as disclosed by the
record, showed that the defendant was the tenant of the plaintiff during
the year 1916, and was holding over as such when the dispossessory
warrant to evict him was sworn out, and that the plaintiff was not
chargeable with any laches in demanding possession of the property.
The court, therefore, did not err in directing a verdict for the plaintiff,
or in thereafter refusing to grant a new trial.

*Judgment on the main bill of exceptions affirmed; cross-bill dismissed.
Bloodworth, J., concurs.　Stephens, J., dissents.*

DECIDED MAY 16, 1919.

Eviction; from Hall superior court—Judge J. B. Jones.　Sep-
tember 7, 1918.

*W. N. Oliver, H. H. Perry,* for plaintiff in error.

*William M. Johnson, W. A. Charters,* contra.

STEPHENS, J., dissenting.　This being a proceeding to dispossess
a tenant, the sole issue here is whether Adams, the defendant, was

·the tenant of Shewmake Brothers Company, the plaintiff. I cannot agree with the conclusion of the majority of the court that the ·undisputed evidence, as a matter of law, established this relationship. Defendant's original entry upon the premises was not as a tenant, but as a purchaser under bond for title as to one parcel, and as to the other parcel as owner and holder of the title until he executed a deed to secure debt from one whose title plaintiff succeeded to. Before the alleged relationship of landlord and tenant arose, which defendant disputed, the relationship between the parties was clearly and undisputedly that of debtor and creditor, the defendant as debtor in possession of the premises, with the plaintiff as creditor out of possession holding legal title as security for· the indebtedness. How the indebtedness originally arose is immaterial here. Defendant was indebted to plaintiff· under various deeds and conveyances to said property for the purpose of securing such indebtedness. This relationship was equivalent to that of mortgagor and mortgagee, and all the rights and equities between the parties were those of a mortgagor and mortgagee.

The case turns upon the question of whether a certain alleged agreement by defendant to pay rent to plaintiff, and a quitclaim deed afterwards executed from defendant to plaintiff to the premises, destroyed the relationship of debtor and creditor and created the relationship of landlord and tenant. The quitclaim deed was not introduced in evidence. It was not in the pleadings, and, while physically attached to defendant's answer, does not appear as an exhibit thereto and was not referred to therein. This deed should properly be disregarded, and should not be considered in determining the questions in the case. Counsel for defendant in error, however, insist that this· deed is a part of the record and should be given due consideration. To do so, however, I do not think would alter the result. The execution of the alleged rent agreement and the execution of the quitclaim deed together were not sufficient as a matter of law, as I understand it, to establish the relationship of landlord and tenant between the plaintiff and the defendant.

Let it be noted here that defendant, by admitting title in plaintiff and the agreement to pay rent, admitted a prima facie case for the plaintiff, which without more was sufficient to establish the relationship of landlord and tenant and entitle plaintiff to a

verdict. The prima facie case thus made was met by defendant with evidence tending to establish the fact that, since the relationship of debtor and creditor had once existed, the agreement to pay "rent" and other acts of the defendant did not, under all the circumstances and the relationship between the parties, constitutes or create the relationship of landlord and tenant. The evidence showed that there was an arrangement financed by plaintiff by which the defendant worked the place and canned vegetables raised thereon, which were taken over by the plaintiff, and that through this and other transactions there arose a mutual indebtedness between the parties; that defendant's indebtedness to plaintiff continually increased; that with this indebtedness hanging over him defendant made the "rent" note or agreement to pay "rent" for the premises to plaintiff, and afterwards made to plaintiff the quitclaim deed covering the same. Defendant contended that the "rent" note was not in reality given for rent, but was given for interest due by defendant, as he contended all the facts and circumstances surrounding the relations and various transactions between him and plaintiff and those whom plaintiff succeeded would show. All of these circumstances are detailed minutely and at length in the evidence.

Where a debtor is in possession of property, title to which is held by the creditor as security for the debt, an agreement by the debtor to pay "rent" to the creditor does not as a matter of law convert the debtor into a tenant of his creditor. In referring to such an agreement the Supreme Court of the United States in Hervey v. Rhode Island Locomotive Works, 93 U. S. 672 (23 L. ed. 1003), said: "Nor is the transaction changed by the agreement assuming the form of a lease. In determining the real character of a contract, courts will always look to its purpose, rather then to the name given it by the parties." The Supreme Court of Georgia, in the case of *Blitch* v. *Edwards,* 96 *Ga.* 606 (24 S. E. 147), in referring to a contract to pay "rent," speaking through Mr. Justice Atkinson, said: "The first great essential in the interpretation of contracts is to arrive at what was the real intention of the parties. . . The contract itself, as stated in the record, aside from the promissory notes, contains a recital, though there was a stipulation for the payment of fifty dollars rent, that in the event the notes were paid, then no rent would be charged. It is difficult

for us, in reading this contract, to determine whether it was a contract really designed to secure the payment of a store account, or whether the defendants intended to treat it as a contract of rental. At all events, the plaintiff entered under a contract of purchase. He paid a certain amount of the purchase-money. This new contract was entered into, and the defendants accepted his notes for the purchase money of that land.. It is not every written contract which uses the word rent, by way of description of sums to be paid for the use of .the property, that creates in cases of personal property a case of bailment, nor in case of real estate a case of landlord and tenant. To determine what the real status between the parties is, it is necessary to look behind mere technical terms employed in drawing a contract, and gather from the whole instrument what was the real legal relation established between them." See also *Hays* v. *Jordan,* 85 *Ga.* 741 (2), 748 (11 S. E. 833, 9 L. R. A. 373) ; *Horne* v. *Mullis,* 119 *Ga.* 534, 537 (46 S. E. 663). "While a tenant cannot dispute the title of his landlord, still upon the levy of a distress warrant and the filing of a counter affidavit he may defend by showing that the contract denominated as one of rental is in fact a contract of purchase." *Leverette* v. *Jefferies,* 8 *Ga. App.* 798 (70 S. E. 177). If the alleged tenant did not obtain possession from the alleged landlord and there has been no adjudication of the question, even though a nominal contract of renting has been reduced to writing, the alleged tenant may still show that the relation of landlord and tenant never existed. See Powell on Actions for Land. § 372. "What is called rent may be shown to be usury. What is called rent may be shown to be unreasonable liquidated damages. What is called rent may be shown to be purchase money." *Lytle* v. *Scottish American Mtge. Co.,* 122 *Ga.* 458 (7), 467 (50 S. E. 402).

A contract to pay "rent" being susceptible to a construction otherwise under all the surrounding facts and circumstances attending its execution, it was therefore a question of fact in this case, to be determined by the jury, whether defendant's agreement to pay rent converted him into a tenant, it being shown that he was in possession as owner and debtor to plaintiff, the latter holding legal title to secure debt, that the relationship between the parties was one of confidence and mutual trust, that defendant, being a debtor, was at a disadvantage at the time of making such

agreement, and all of the other circumstances surrounding the transaction.

As to the quitclaim deed, it confers upon the plaintiff no better title than he already possessed. He had title as security for a debt, and the quitclaim deed could only benefit him by stripping defendant of his equity of redemption. Where the relationship of debtor and creditor or mortgagor and mortgagee existed, the courts are loath to construe any subsequent contract or conveyance of title, though absolute on its face, as a forfeiture of the grantor's right to redeem upon payment of the indebtedness. Where the grantor still retains the possession which he acquired as owner and afterwards held as mortgagor, such a subsequent conveyance will be regarded as additional security for the debt, rather than as a forfeiture of the grantor's equity of redemption. Such a conveyance will not under such circumstances, as a matter of law, be construed as abrogating the relationship of debtor and creditor or mortgagor and mortgagee, and giving to the grantee full and complete dominion over the premises in question.

Once a mortgage always a mortgage is a well-recognized maxim of our law. How and in what manner can a mortgagee or holder of the legal title to secure debt subsequently acquire any further interest or right in the mortgaged property from a debtor? Unquestionably it can be done by contract. Equity, however, will closely and carefully scrutinize such a transaction before allowing it to stand. "It is perfectly competent for the mortgagor to sell, and for the mortgagee to buy, the equity of redemption, by a subsequent and independent contract entered into in good faith and for a good consideration, or for the mortgagor to surrender the absolute ownership of the premises to the mortgagee as payment of the debt. But courts of equity will scrutinize such a transaction between the parties closely and with jealous care, and will not allow it to stand unless shown to be entirely fair and honest; for the bargain will be set aside if it appears to have been induced by any fraud, artifice, overreaching, or advantage taken by the mortgagee of his commanding position with reference to the property, or of the ignorance, inexperience, or necessitous circumstances of the mortgagor." 27 Cyc. 1373. Where it appears that a conveyance releases the equity of redemption to a mortgagee, "it must unequivocally appear that both parties intended that the conveyance

should so operate." 11 Am. & Eng. Enc. Law (2d ed.), 246. "Contracts made with the mortgagor [by the mortgagee] to lessen, embarrass, or restrain the right of redemption are regarded with jealousy and generally set aside as dangerous agreements, founded in unconscientious advantages assumed over the necessities of the mortgagor." 4 Kent's Com. 159. The law, where the mortgagor has conveyed to the mortgagee his equity of redemption, is that which covers the sale by a cestui que trust to his trustee. "It must be shown that the conduct of the mortgagee was in all things fair and frank. . . He must take no advantage of the fears or poverty of the other party." Villa v. Rodriguez, 12 Wall. (U. S.) 323, 339 (20 L. ed. 406) ; 3 Pomeroy's Equity; Darst v. Murphy (1887), 119 Ill. 343 (9 N. E. 887) ; Hoffman v. Ryan (1883), 21 W. Va. 415; Williams v. Reggan (1895), 111 Ala. 621 (20 So. 614) ; Haggerty v. Brower (1898), 105 Iowa, 395 (75 N. W. 321).

Under the above authorities, I am of the opinion that, under all of the facts and circumstances disclosed by the evidence, it was for the jury to determine whether or not the agreement to pay "rent" and the quitclaim deed established the relation of landlord and tenant, and that the trial judge should not have directed a verdict for the plaintiff. I dissent from the judgment of affirmance in the main bill of exceptions; but since this judgment is affirmed, I concur in the dismissal of the cross-bill.