### 13917.   BROADWELL *v.* MAXWELL.

1. A demand upon a tenant to deliver possession to his landlord being a condition precedent to the right of the landlord to dispossess the tenant summarily under the Civil Code (1910), § 5385, for nonpayment of rent or as a tenant holding over, it is, in such a proceeding, error to direct a verdict for the plaintiff where the evidence is conflicting on the issue as to whether such demand upon the tenant had been made.

2. "It has been held: ' A plaintiff in execution who, at the instance of the defendant in execution in possession of land under a deed, bids off the land at a sheriff's sale, under a parol agreement with the defendant that he will buy in the land and take the sheriff's conveyance to himself for the benefit of the defendant and allow the defendant to redeem the land upon the payment of the judgment (the value of the land exceeding the amount of the judgment), and who, while the bidding is in progress, discourages bidding by others by stating that he is bidding in behalf of the defendant, holds as trustee for the latter such title as he derives from the sheriff, and, on being paid or tendered in due time the amount

of the judgment with interest, may be compelled by decree to convey the premises to the defendant in execution by release or quitclaim deed.' *Dowling* v. *Doyle*, 149 *Ga.* 727 (102 S. E. 27)." *Broadwell* v. *Smith*, 152 *Ga.* 161 (108 S. E. 609).

3. Any contract made by a cestui que trust with his trustee which upon its face has the effect of limiting the trust and establishing a relationship more beneficial to the trustee should be scanned with great care, and effect will not be given thereto if it appears that the trustee is thereby seeking to exercise an inequitable and unconscionable advantage, and is attempting, without any benefit to the cestui que trust, but to the advantage of the trustee, to destroy the relationship and establish another which gives all the benefit to the trustee.

4. A contract of " tenancy " containing an agreement to pay " rent," made by a debtor or cestui que trust in possession of land to his creditor or trustee holding title to or a lien upon the land as security for a debt, will be construed in the light of this equitable relationship between the parties, giving due consideration to the advantage under the circumstances held by the creditor or trustee over the debtor or cestui que trust. When so construed such contract may be taken as not establishing the relationship of landlord and tenant, but as further defining the terms of the trust, and the agreement to pay " rent " may be construed as an agreement to pay interest on the debt.

5. Where the so-called contract of tenancy is but an effort to reduce to writing certain terms of the agreement between the creditor and the debtor, made when the creditor acquired title by purchasing the property for the benefit of the debtor, whereby it is agreed that the debtor shall continue in possession of the premises as tenant with the right to redeem the property upon payment of the purchase-money, such contract may be looked to in determining the conditions and limitations upon the defendant's right to redeem.

6. Where such contract of tenancy provides for a tenancy at will between the parties it may, when construed as above indicated with reference to the trust relationship and all the circumstances surrounding its creation, establish the debtor's right to redeem as existing so long as the so-called tenancy exists and the debtor remains in possession paying the " rent " or interest contracted for.

7. Where the debtor or cestui que trust in possession with an existing right to redeem the property upon the payment of the purchase-money attempts to exercise such right by making a proper tender of the purchase-money, and the tender is refused, the debtor can not, upon remaining in possession and failing to continue the payment of " rent," be summarily dispossessed as a tenant.

8. " Possession of land is notice of whatever right or title the occupant has." Civil Code (1910), § 4528. A purchaser bona fide for value therefore is not protected as a purchaser without notice; and where the legal status of the person in possession is that of one holding an equitable title in the property, the purchaser takes with notice of such title, and therefore can not treat the occupant as a tenant and summarily dispossess him for non-payment of rent.

9. The evidence here makes an issue, under a proper application of the rulings of law herein announced, as to whether or not the relationship between the parties was that of landlord and tenant, or some other relationship whereby the defendant has an equitable title in the land.

10. The bond to reconvey given by the creditor to the debtor, conditioned upon the repayment of the loan which created the indebtedness out of which the present situation arose, is relevant to the issue.

DECIDED SEPTEMBER 22, 1923.

Eviction; from Cobb superior court — Judge Searcy presiding. August 12, 1922.

Application for certiorari was made to the Supreme Court.

*George F. Gober,* for plaintiff in error.

*Clay & Blair, Anderson & Roberts,* contra.

STEPHENS, J. 1. W. H. Maxwell instituted summary proceedings to dispossess R. G. Broadwell as his tenant failing to pay rent and holding over beyond his term, alleging that possession of the premises had been demanded of the tenant and that the demand had been refused. The tenant interposed a counter-affidavit, which in substance alleged that he did not hold the property as a tenant but that he had been the original owner of the premises, and as such had borrowed thereon $3,500 from one Peter Smith, to whom he had given a deed to the property to secure the indebtedness; that the debt had been reduced to judgment by Smith and the property offered for sale on the first Tuesday in November, 1916; that on the day of the sale, and before the property was sold, Smith, through his attorney, agreed with the defendant that, if the defendant and his friends would refrain from bidding on the property, Smith would buy in the property and allow the defendant to redeem it by the payment of the indebtedness, which at that time amounted to $4,300; that the property was reasonably worth $10,000, having cost the defendant $14,000; that Smith bid in the property for $2,100; that " soon thereafter Smith agreed that this defendant could have until November 1st, 1917, to redeem the property, and should pay $25 per month to keep the debt [from] growing larger; the interest was computed at 7% per annum; and while the property, being in the town of Roswell, was worth only $12.50 per month as rent, this defendant paid said $25 per month on the debt; . . that during the month of October, 1917, this defendant went to Smith and asked that he extend the time to redeem to February 1st, 1918, which said Smith agreed to do upon the condition that this de-

fendant pay the $25 per month to February 1st, 1918, which de-
fendant agreed to do, and has paid as agreed, up to February 1st,
1918, the agreement was carried out by this defendant as agreed,
and on the 18th day of January, 1918, this defendant tendered to
Mrs. Smith, the administrator of Peter Smith, the $4,300, and
also the Sessions Loan & Trust Company, who had the matter
in charge, and which tender was refused, and any other amount
that might be due, although under the agreement of Smith this
was the entire amount due; this defendant sets up and alleges
that he complied with his agreement, and he holds the property
as his own under the said facts." The defendant further alleged
his ability and willingness to carry out his contract and to pay
the amount due under the agreement with Smith. He also denied
that the plaintiff, Maxwell, demanded possession of the property
as required under the statute as a condition precedent to the in-
stitution of the proceedings to dispossess.

On the trial the plaintiff proved that he was a purchaser of the
property, holding under a bond for title from Smith, and that he
had paid the entire purchase price therefor, but that he held no
deed to the property. He put in evidence a written agreement
between Smith and the defendant, executed November 21, 1916,
made less than three weeks after the date of the sheriff's sale to
Smith, the material parts of which, after reciting the sale at public
outcry on November 7, 1916, and describing the property in ques-
tion, are as follows: "Whereas said Peter Smith was the highest
bidder at said sale and same was knocked off to him, and whereas.
the said R. G. Broadwell desires to remain in possession of said
property as the tenant of said Peter Smith, now therefore this
agreement witnesseth: that for and in consideration of said Peter
Smith allowing and permitting said R. G. Broadwell to remain in
possession of said property, the said R. G. Broadwell does hereby
covenant and agree that he is now a tenant at will in the possession
of the said property, and so long as said tenancy shall last he will
pay rent to said Peter Smith at and after the rate of $25.00 per
month in advance, the said rent to begin on the date hereof and to
be due and payable on the 21st day of each month in advance
pending the termination of this lease by either party." The
plaintiff proved also a failure by the defendant to continue paying

rent after the defendant had offered to repay the amount due on the loan.

Without more, the plaintiff Maxwell would, provided he had complied with the statutory requirement and demanded of the defendant possession of the property prior to the institution of the proceeding to dispossess, have been entitled to a verdict.    There being, however, the evidence of the defendant denying that any such demand had ever been made upon him, which, if believed by the jury, would have authorized a verdict for the defendant, the action of the court in directing a verdict for the plaintiff was, irrespective of any other issues in the case, error.    For this reason the verdict rendered for the plaintiff must be set aside and a new trial granted.

2-7.   Under our view of the law applicable to the case, this evidence can not be taken standing alone, but must be taken in connection with all the other evidence in the case.    The entire evidence, including the written contract of " tenancy," when considered with all the deductions that can be made therefrom, tends to establish the defendant's relationship to the property as being other than that of a tenant of either Smith or the plaintiff Maxwell.

The Supreme Court of this State, in a case between Smith and the defendant Broadwell, where Broadwell sought specific performance of the alleged right to redeem, held that the defendant's situation under the facts here alleged in the counter-affidavit (without any reference to the written contract of " tenancy," evidence of which was not in the record before that court) was that of a cestui que trust, with Smith holding the legal title to the premises as trustee.   See *Broadwell* v. *Smith*, 152 *Ga.* 161 (supra) ; *Dowling* v. *Doyle*, 149 *Ga.* 727 (supra) ; *McRarey* v. *Huff*, 32 *Ga.* 681; 1 Perry on Trusts (6th ed.), § 215.   It follows, therefore, that when the defendant Broadwell made the alleged agreement with Smith's attorney, by the terms of which bids were choked off and Smith bid in the property at reduced figures and took a deed from the sheriff and allowed Broadwell to remain in possession and pay a certain amount as " rent," with the right to redeem the property upon the payment of the indebtedness, the relationship between the parties was that of trustee and cestui que trust. In the case now before us, where the evidence is supplemented by

the written contract of "tenancy," so called, this contract must be construed in the light of this relationship, and equitable principles must be applied thereto, and this contract given an effect accordingly. This being a resulting trust, the statute of frauds does not apply (*Chastain* v. *Smith*, 30 *Ga.* 96), and the parol agreement will be considered. It is fundamental that any contract made by a cestui que trust with his trustee which has upon its face the effect of limiting or obliterating the trust and establishing a relationship more beneficial to the trustee, if not void, should at least be scanned with great care. Effect will not be given thereto where it appears that the trustee is seeking thereby to exercise an inequitable and unconscionable advantage, and is attempting, without any benefit to the cestui que trust, but to the advantage of the trustee, to destroy such relationship, and, as in the case here under consideration, establish one giving all benefit to the trustee. Without elaborating this proposition or citing authorities here to sustain it, attention is called to the authorities collected by the writer in an opinion in the case of *Adams* v. *Shewmake*, 23 *Ga. App.* 741 (99 S. E. 473). There the question was as to the effect to be given to a contract between a mortgagee and a mortgagor which purported to convert that relationship into one of landlord and tenant. The principles there applicable are applicable to the situation here, where the trust relationship is that of creditor and debtor, and the creditor trustee is seeking to destroy the trust relationship and to convert it into a relationship of landlord and tenant.

When the written contract of tenancy was executed by Broadwell at the instance of Smith through his attorney, the parties were not contracting at arm's length. Smith had foreclosed on Broadwell, who was his debtor or mortgagor, and had bought in the property, and, but for the agreement allowing Broadwell to redeem, made on the day of the sale, had forever foreclosed Broadwell's right to redeem. Broadwell, after the sale and purchase of the property by Smith, continued to live on the property virtually at the sufferance of Smith, Smith voluntarily agreeing to allow him to remain by continuing to pay "rent," with an assurance of a right to redeem. When therefore the written contract of tenancy, so called, was presented by Smith's attorney to Broadwell for execution, Broadwell was at a disadvantage, and by reason of said

disadvantage and the circumstances under which he was holding possession of the property, he was necessarily under more or less coercion and constraint in executing this contract. Broadwell testified as follows: " The sale by the sheriff was about the 1st of November, 1916. The agreement entered into with Mr. Bently was on the day of the sale, but the papers were fixed, I believe, on the 21st, but I wont say for certain about the date. I signed the paper you hand me. As to this contract being a culmination of the conference and agreements between Mr. Bently and myself from the time the sale was had, there wasn't anything said about this contract until the 21st; we had an agreement I was to pay the interest and he drew that contract and brought it to me, and I told him at first I wouldn't sign it; he said, ' That won't keep you from having the right to redeem the property. . . After Mr. Bentley's statement to me that I still had the right to redeem this property I voluntarily took the contract and executed it at Roswell. I understand the meaning of the English language, but I took Mr. Bentley at his word, thinking that he would treat me right. I understood that I was signing a paper stating that I was a tenant at will of Smith's, but I signed under protest to him, unless he agreed to it. I did not put my protest in writing."

This contract, therefore, can not be taken standing alone and divorced from all other facts and circumstances between the parties. It must be construed in connection with the right given to Broadwell to redeem the property, and with due consideration to his occupancy of the property and his payment of the agreed " rental " for such purpose, which " rental," it appears, was equivalent to the interest due, and was in excess of the true rental value. So construed, this contract can not be given the effect of destroying the relationship of trustee and cestui que trust and converting the relationship into that of landlord and tenant.

It being the duty of Smith under his original agreement with the defendant Broadwell to stand as trustee for the defendant Broadwell as cestui que trust until after the expiration of the time given for redemption and the termination of the trust, an acquisition by Smith of this equitable interest of Broadwell, the cestui que trust, by any breach of Smith's duty as trustee, such as by forcing, if he did, from the cestui que trust the contract of rental by which the cestui que trust surrendered to his trustee

all of his equitable estate and agreed to hold as tenant, would be an unconscionable and mala fide violation of his trust, and such contract would therefore be void and would not be allowed to stand. 1 Perry on Trusts (6th ed.), § 347.

The defendant testifies generally that the right to redeem was given him until the first of February, 1918. This evidence, taken in connection with the so-called written agreement to pay "rent," which provides for a " tenancy " at will at the " rental " previously agreed upon, authorizes the inference that the true agreement between the parties was that the defendant should continue in possession of the property as under a tenancy at will, with a right to redeem existing so long as the so-called tenancy continued. This " tenancy " had not expired when the defendant sought to redeem the property by tendering payment of the amount due on the loan.

The Supreme Court, in reviewing this case, where the evidence presented in the record was silent as to the written contract of " tenancy " at will appearing here, but established that the defendant's right to redeem expired on the first of November, 1917, and there appeared no consideration for the renewal thereof, held that the alleged right to redeem, so far as it depended upon the renewal, could not be given effect. *Broadwell* v. *Smith,* supra. The evidence here, in the light of the written contract of " tenancy," presents a different case.

It is true that in his counter-affidavit the defendant alleges that there was an agreement allowing him until November 1, 1917, to redeem the property, and that before this date Smith agreed to extend this right until February 1, 1918. It may be true that the defendant and Smith had dealings and conversations with one another which might be urged as establishing such a contractual relation between them, but which, by reason of some infirmity, did not constitute a valid and enforceable agreement. Yet the existence of such seeming contract and the allegations by the defendant as to its legal existence would not preclude the existence of a legal and binding agreement between the defendant and Smith, evidenced by the written rental contract, taken in connection with all the facts and circumstances of the case, giving the defendant the right to redeem upon repayment of the loan so long as the tenancy existed and the defendant remained in possession paying

the $25 so-called rent, which included interest on the loan. Whether this latter contractual relationship between the parties, which is sustained by evidence in the case before us, can be sustained under the defendant's pleadings set out in his counter-affidavit, it is not necessary to decide, since a new trial is granted upon the ground that there was an issue of fact as to whether possession of the premises had been demanded by the plaintiff.

The defendant's right to redeem was more than a mere contract to purchase at his option, where this right would be forfeited upon his failure to assert it within a specified time. The right of the defendant was an equitable interest or estate in the property. This right, even conceding that it was limited to a definite period of twelve months, can not be considered as having been automatically forfeited by the defendant's mere failure to redeem within that period. Equity does not look with favor upon a forfeiture. Even assuming that there was no consideration for the extension of the agreement, regarded as a mere option to purchase, yet where the trustee, Smith, had not declared the defendant's right to redeem forfeited upon the defendant's failure to exercise it within the time limited, but had continued to accept the monthly payments agreed upon as "rent," which "rent" amounted to or included interest upon the indebtedness, and therefore kept the indebtedness alive and as an obligation resting upon the defendant, which was inconsistent with a forfeiture of all of the defendant's equitable rights to redeem, a declaration by Smith, the trustee, that the defendant's time for redemption had been extended until a certain date, at least amounted to a waiver by the trustee of his right to terminate the defendant's equitable estate for the failure to redeem within the time originally stipulated. The acceptance from the defendant by the trustee of the "rent," or interest, originally agreed upon, which was paid by the defendant under the belief, as the trustee knew, that the defendant's right to redeem still existed, estopped the trustee from denying the defendant's right to redeem within the extended period, during which the defendant had paid the rent or interest required. So long as the defendant was paying as rent what in reality was interest on the loan, and the loan was thus left open as a binding obligation upon him, which was the situation up to the time tender was made and a deed demanded, the defendant's right to redeem

the property upon payment of the loan certainly was not fore-closed. This is true without reference to any question as to a consideration for the bare agreement to extend the so-called option.

The evidence adduced upon the trial tended to establish an equitable title in the defendant with the right to redeem and acquire the legal title upon a tender and a payment of the debt, and the relation of landlord and tenant between the plaintiff and the defendant therefore was not as a matter of law established.

8. The plaintiff Maxwell, who claims to have purchased the property from Smith, and who is seeking to dispossess the tenant, is not a bona fide purchaser for value without notice of whatever equitable title the defendant had in the property. "Possession of land is notice of whatever right or title the occupant has." Civil Code (1910), § 4528. "He who takes with notice of an equity takes subject to that equity." Civil Code (1910), § 4529. "Notice sufficient to excite attention and put a party on inquiry is notice of everything to which it is afterwards found such inquiry might have led. Ignorance of a fact, due to negligence, is equivalent to knowledge, in fixing the rights of the parties." Civil Code (1910), § 4530. A purchaser therefore is put on notice of all the right, title, and interest of a tenant in possession. The rule is not different where the tenant in possession is a cestui que trust.

Actual possession by the cestui que trust is constructive notice to a purchaser as to the occupant's equitable title. *Bridger* v. *Exchange Bank,* 126 *Ga.* 821 (56 S. E. 97, 8 L. R. A. (N. S.) 463, 115 Am. St. R. 118); *Baldwin* v. *Sherwood,* 117 *Ga.* 827 (45 S. E. 216); *Garbutt* v. *Mayo,* 128 *Ga.* 269 (57 S. E. 495, 13 L. R. A. (N. S.) 58); *Sewell* v. *Holland,* 61 *Ga.* 608; *Jordan* v. *Rhodes,* 24 *Ga.* 478; *Thompson* v. *Lewis,* 2 *Ga. Dec.* 205.

Perry, in his work on Trusts, says: "Actual possession by the cestui que trust . . . is constructive notice to the purchaser that there is some claim, title or possession of the property adverse to his vendor; and this fact should put him upon his inquiry, for if he had inquired he would have discovered the exact title and the equitable claims upon it; he therefore has constructive notice." 1 Perry on Trusts (6th ed.), § 223.

It appears from the evidence that the plaintiff holds under a bond for title. It conveys no title, and is nothing more than a

contract to sell. *Martin* v. *Wright*, 21 *Ga.* 504. Although he has paid the purchase-money he has not received a conveyance from Smith, from whom he purchased. A purchaser, to be protected as a bona fide purchaser for value, must, according to Mr. Perry, show a conveyance and not an agreement to purchase. See 1 Perry on Trusts, §§ 219, 829. "It is held that the money must be wholly paid before notice. This rule proceeds upon the ground that as the purchaser is taking the transfer of a title that defeats the equitable rights of a third person, he shall be held to take such title subject to all the equities that attach to it at the time it passes. If, therefore, he pays no money at the time the title passes, he has no equity to set up against the equity of a third person, and if he has notice before he pays the money, he pays in his own wrong. And so, if he has paid his money, but has not yet taken the title when he receives notice, he takes the title subject to all the equities that attach to it when the conveyance is actually made to him, as he then has a right to refuse the conveyance and to demand back his money." 1 Perry on Trusts (6th ed.), 221. Isn't Maxwell, for this reason, an unprotected purchaser?

9. It not being established as a matter of law that the relation of landlord and tenant existed between the plaintiff and the defendant, and the plaintiff not being a bona fide purchaser for value without notice of the defendant's title, an issue of fact was presented for the jury. *Bashinski* v. *Swint*, 133 *Ga.* 38 (65 S. E. 152); *Griffin* v. *Collins*, 116 *Ga.* 420 (42 S. E. 743); *Henry* v. *Perry*, 110 *Ga.* 630 (36 S. E. 87); *Story* v. *Epps*, 105 *Ga.* 504 (31 S. E. 109); *Edwards* v. *Blackshear*, 24 *Ga. App.* 622 (101 S. E. 585).

*Judgment reversed. Bell, J., concurs. Jenkins, P. J., concurs in the judgment.*